## REICHERT TOWING LINE, Inc., v. CITY OF NEW YORK.

### No. 357.

Circuit Court of Appeals, Second Circuit.

May 2, 1932.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellant.

Arthur J. W. Hilly, of New York City (Lester W. Easton, of New York City, Charles J. Carroll, of Brooklyn, N. Y., and John T. Condon, of New York City, of counsel), for respondent-appellee.

Single & Single, of New York City (Thomas H. Middleton, of New York City, of counsel), for libelant-appellee L. R. Connett & Co., Inc.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This is a consolidated action under the above title. Originally the Reichert Towing Line, Inc., owner of the tug Frederick Reichert, filed its libel against the city of New York to recover the damages to that tug due to a collision in the draw with the Meeker Avenue Bridge across Newtown creek; and L. F. Connett & Co., Inc., owner of the scow Tom, filed its libel against the tug to recover the damages to that boat when the tug collided with it as a result of the accident at the bridge. The city of New York was impleaded in the last-mentioned action. After the two causes were consolidated, they were heard together and will be considered as one on this appeal. The Reichert was held solely at fault.

The Reichert with the Tom in tow alongside to port went up Newtown creek on the morning of November 23, 1929, to Meehans Dock. This dock is located on the Queens side of the creek from fifty to one hundred feet below the Meeker Avenue Bridge. After the Tom had been made fast, the tug's mate telephoned from the dock for further orders and received instructions to proceed up the creek. While telephoning, he saw the bridge open to permit an up-bound tug and tow to go through the draw on the Brooklyn side and hurried back to report to his captain so that his tug might go through the draw on the Queens side on the same opening. The tug then started for the draw; went to full speed ahead, and was nearly halfway through before the bridge was seen closing against her. Alarm signals were then blown and the engines put full speed astern. The bridge tender at once tried to stop the bridge but was unable to do that before the tug was struck and damaged. Part of the damage was to her steering apparatus, and before the effect of the collision was spent the Reichert had gone back into collision with the Tom still tied at the dock.

There was evidence from the tug that it gave the customary whistle signal for the bridge before it started to go through the draw, but the evidence was contradicted and the trial judge found that it did not then give any signal. The correct determination of this important fact depends wholly upon the credibility of the witnesses who testified. There are no safe guides in this record which lead us to any conclusion contrary to the finding below, and on this point we can merely apply the familiar rule that fact findings of the trial court on oral evidence should be undisturbed unless we are clearly satisfied that they are erroneous. It was proved that a signal to the bridge should have been given by the tug before it attempted to go through the draw whether the bridge was open or not and, with the finding against it on this point, the fault of the tug is plain. It tried to save a few minutes by slipping through before the bridge closed and did not move quite soon enough or quite fast enough to succeed.

It is not so easy to agree with the trial court that there was no fault in operating the bridge. It would have taken about a minute and a half to close it after the operator

turned on the power. He testified that when the tug and tow for which he opened the bridge was nearly through, he looked up and down the creek, saw the Reichert tug then at the dock, heard no signal from it, and started to close the bridge behind the tow on its way through. The first he saw or heard of the Reichert after that was an alarm signal it blew when the bridge was about half shut. He immediately turned off the power and applied the brake but could not overcome the momentum in time to prevent the collision. The real difficulty comes in trying to decide whether the' operator on the bridge should have seen the Reichert coming into the draw at a time when the closing of the bridge could have been arrested to avoid the collision. Certainly a heavy duty to justify its conduct rests upon a bridge which closes in broad daylight against a boat. See Newtown Creek Towing Co. v. City of New York (C. C. A.) 47 F.(2d) 883. Yet when the operator looked and saw the Reichert at the dock before he started to close he might reasonably have believed that that tug was safe enough against a closing begun at once; and so she would have been, in all probability, but for the fact that in the haste to start and get through no one noticed that the bridge had begun to close. At any rate, the finding below that the fault was solely that of the Reichert is, we think, in accord with the most reasonable view of the evidence and so we accept it. Of course, no one claims that the Tom was at fault in respect to the damage it received.

Decree affirmed.